UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JODY W.,

Plaintiff,

                                    Case No. 1:20-cv-1756-TPK

    v.

COMMISSIONER OF SOCIAL               OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by an ALJ on August 6, 2020, after a remand from this Court, was partially favorable to Plaintiff, finding her disabled as of January 12, 2016. Plaintiff has now moved for judgment on the pleadings (Doc. 8), and the Commissioner has filed a similar motion (Doc. 9). For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

On September 8, 2015, Plaintiff filed her application for disability insurance benefits, alleging that she became disabled on October 20, 2014. After a hearing was held before an ALJ on November 2, 2017, the ALJ issued a partially favorable decision on March 5, 2018, finding Plaintiff to be disabled as of January 12, 2016. That decision was affirmed by the Appeals Council on November 20, 2018. Plaintiff then appealed to this Court. In an order dated December 13, 2019, pursuant to the parties' stipulation, the Court remanded the case to the Commissioner for further proceedings. *See* Case No. 1:19-cv-0082, Doc. 15. The ALJ held a second administrative hearing on June 16, 2020. In a decision dated August 6, 2020, the ALJ reaffirmed the prior decision that Plaintiff did not become disabled until January 12, 2016. That is the decision which is the subject of Plaintiff's current complaint.

The findings made by the ALJ are as follows. First, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that she had not engaged in substantial gainful activity since her alleged onset date. Next, he concluded that she had severe impairments including degenerative disc disease, status post surgery; degenerative joint disease of the left knee, status post arthroscopy; and carpal tunnel syndrome, status post left release. He further determined that none of her impairments, severe or nonsevere, met the requirements for disability under the Listing of Impairments.

Moving to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to do a limited range of light work. She could push and pull with her arms only occasionally, could not climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, crouch, and crawl, and could reach overhead only occasionally. Additionally, she could frequently handle and finger bilaterally, and she needed to avoid concentrated exposure to extreme cold, humidity and wetness, slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames. With these limitations, the ALJ determined that Plaintiff could not do her past relevant work as a licensed practical nurse, and that because she moved to the advanced age category on January 12, 2016, she was deemed disabled as of that date. However, between her onset date and January 12, 2016, the ALJ concluded that Plaintiff could do light work like cashier II, photocopying machine operator, and router, all jobs which existed in substantial numbers in the national economy. As a result, he determined that she was not entitled to benefits during that time period.

Plaintiff, in her motion for judgment, raises a single issue. She contends that the ALJ's decision was not supported by substantial evidence because he reached his residual functional capacity determination without the benefit of any medical opinion which he found persuasive.

## II. THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing. It will then discuss the pertinent medical records.

### A. Hearing Testimony

Plaintiff was 56 years old when the first administrative hearing was held. At that hearing, she testified that she last worked in October, 2014 as a licensed practical nurse. She stopped working due to a knee injury and, later, a broken ankle. Plaintiff said that she had limited motion in her neck, could not feel her hands, dropped objects frequently, and had numbness in her right arm. She was also unable to sit or stand for long periods and had headaches.

Plaintiff was living at the time in a house with her husband and grandson. She avoided going up and down stairs as much as possible and had a first floor bedroom. She was able to drive short distances. Plaintiff took medication for pain and for diabetes. On a typical day, she packed lunch for her grandson, rested, watched television, and cooked dinner. Her husband and grandson did most of the household chores and the shopping. She had difficulty sleeping at night due to pain and would sometimes nap during the day. Plaintiff was able to attend some school functions and she socialized with friends.

The most significant problems Plaintiff faced involved her head, shoulders, arms, and left ankle. She also had severe headaches which had gotten worse since her last surgery. She could

not lift a gallon of milk with her right hand.  She also could not turn her head or she would get muscle spasms in her back.  Lifting her arms overhead was also an issue.  The most comfortable position she had found was sitting in a recliner with her legs elevated.  Plaintiff believed she could stand for 15 minutes, walk for 20-25 minutes, and sit for 30 minutes.  Due to her injuries and pain, Plaintiff no longer engaged in activities she had done before, such as walking, gardening, or crafting.

At the second hearing, held after remand, Plaintiff clarified that she had returned to work after her injury and was put on light duty, but was unable successfully to perform those duties because of problems with her neck, arms, and hands.  During the time period in question here (October, 2014 to January, 2016) she also had headaches and her walking was unsteady.  Additionally, she could not turn her head.  She spent her days listening to music and watching television.  She had had neck surgery but it did not alleviate her neck pain; in fact, the pain in her arms worsened.  She was also using a cane occasionally at that time.

A vocational expert, Dr. Warren, also testified at that hearing.  She identified Plaintiff's past work as licenses practical nurse, a skilled position which is generally performed at the medium exertional level.  She was then asked questions about a person with Plaintiff's vocational background who could do light work with some postural and environmental limitations.  Dr. Warren said such a person could not do Plaintiff's past work but could do light jobs like cashier II, photocopying machine operator, and router.  All of them required frequent reaching except for overhead reaching, which would be done only occasionally.  If the person could do only occasional handling and fingering, however, those jobs would be precluded, and there would be no other jobs available.  The same would hold true if the person missed more than one day of work per month or were off task for more than 15% of the time, or if he or she could reach in the lateral direction only occasionally.

### B.  The Medical Evidence Including Opinions

Plaintiff's memorandum sets out the medical evidence in some detail, as does the ALJ's decision.  Briefly, Plaintiff had neck surgery in 2009 and in March, 2014, reported continued symptoms including pain radiating from her neck into her arms and numbness in her hands. In October, 2014, she wrenched her neck and twisted her left knee while trying to avoid an aggressive patient at work.  She was treated in the emergency room for those injuries and referred to a specialist or primary care physician.  An MRI study of her neck and back done in November showed multiple disc herniations.  She was then seen by Dr. Parentis at WNY Knee and Orthopedic Surgery after fracturing her ankle.  Dr. Parentis prescribed a walking boot and, later, an air cast.  Even after the fracture healed, Plaintiff continued to report pain with activity and bending.  By July of 2015, she was back in a normal shoe and she was participating in physical therapy.

Dr. Huckell, by way of referral from the Workers' Compensation Board, saw Plaintiff several times in 2014 and 2015 to evaluate her knee injury.  At her initial visit, Plaintiff told Dr. Huckell that her knee hurt when she climbed stairs or engaged in prolonged walking and

standing.  X-rays showed mild osteoarthritis in the knee.  Dr. Huckell prescribed a course of physical therapy and told her rest, elevate, and ice the knee as needed.  Taking only the knee injury into account, he found a 75% marked partial impairment and restricted her to sedentary work.  At a later visit, Plaintiff reported increased left knee pain made worse by activity.  An MRI showed additional abnormalities in the knee.  As of April, 2015, walking, standing, and climbing stairs were still causing her to experience knee pain.  She had arthroscopic surgery on the knee in May, 2015.  The knee was better a month later but Plaintiff was still having increased pain on activity, and that continued into July although she also said she had improved significantly.  In notes from that month, Dr. Huckell concluded that any disability from the knee injury had resolved.   However, she was continuing to experience neck pain, and Dr. Matteliano, who was following her for that problem (and had been seeing her since 2012 for her neck pain) reported throughout this same time that Plaintiff had a 75% temporary impairment from her neck injury.

In September, 2015, Plaintiff underwent a second neck surgery involving a diskectomy, fusion, and plate fixation.  The surgical noted from Dr. Simmons (who also performed the earlier surgery) indicated that surgery took place "[d]ue to the severity of the symptoms and the effect on [Plaintiff's] quality of life and level of function."  (Tr. 513).  A month later she was still reporting pain and headaches.  In November of that year, Dr. Simmons evaluated her disability at 100%, as he had done prior to the surgery as well following the October, 2014 injury.  Well into 2016 and even into 2017, Dr. Simmons was still rating Plaintiff's disability from her neck injury at 100%.  He noted that she was still having daily headaches, had a limited range of cervical motion, and was also experiencing carpal tunnel syndrome in both arms, and reported that the paresthesia and weakness of the hands which she was experiencing had been present since her injury and was getting worse over time.  A report from Dr. Tetro dated October 21, 2016 indicated that Plaintiff had experienced symptoms of carpal tunnel syndrome since at least 2008 but that her current symptoms could also be related to her neck injury, and that they included grip weakness and dropping objects.  He did not think she could engage in highly repetitive gripping, grasping, or forceful gripping with either hand.

The balance of the medical records significantly post-date January 12, 2016, the date on which Plaintiff's disability began.  They do show that the second cervical fusion did not adequately consolidate and that Dr. Matteliano believed that the combination of Plaintiff's spinal injury, knee problems, ankle fracture, and bilateral carpal tunnel syndrome - all of which were present during the time period in question here - rendered her permanently disabled.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary

review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A. The ALJ's Decisions

In his initial decision, the ALJ summarized the evidence up to that point (February of 2018) and found that Plaintiff's residual functional capacity was affected by her degenerative disc disease of the neck and degenerative joint disease of her left knee as well as by her carpal tunnel syndrome.  He concluded that all of these impairments limited her to working at the light exertional level with other restrictions.  The ALJ then reviewed the various medical opinions, giving little weight to all of the treating physician opinions which assigned a percentage of disability to Plaintiff; little weight to the opinion of the Worker's Compensation Committee; some weight to the opinion from the doctor treating Plaintiff's carpal tunnel syndrome that Plaintiff could do light work with no highly repetitive grip grasp; and little weight to the state agency consultant's opinion (which is not a medical opinion).  He then reached his residual functional capacity finding and, following the testimony given by the vocational expert who testified at the first administrative hearing, found that Plaintiff could do light jobs like inspector/hand packager, cashier II, and small parts assembler.  (Tr. 11-20).

After the Appeals Council denied review of that decision, and after the parties stipulated to a remand order from this Court once a complaint had been filed, the Appeals Council issued an order vacating the decision and remanding the case to the ALJ for to clarify certain vocational issues.  More specifically, the Appeals Council noted a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles as it related to Plaintiff's ability to engage in

both overhead and lateral reaching.  The ALJ was directed to take additional testimony from a vocational expert which addressed and resolved any such conflicts.  (Tr. 956-69).

Following the submission of additional medical evidence and the holding of the second administrative decision, the ALJ issued a decision which was, in most respects, identical to the first decision.  He found that Plaintiff had the same severe impairments as those listed in the first decision and also had the same residual functional capacity.  He again assigned little weight to most of the treating source opinions, including those submitted after the first decision, and the only opinion to which he gave some weight was the one which limited Plaintiff to light work with no highly repetitive grip grasp.  Finally, he noted that the testimony of the new vocational expert adequately explained that there were light jobs available to Plaintiff which required frequent lateral reaching but only occasional overhead reaching, something not directly addressed in the DOT.  As a result, he did not change his ultimate decision concerning disability.  (Tr. 847-58).

## B.  Substantial Evidence

The issue Plaintiff has raised concerning the ALJ's decision relates to the fact that he crafted a residual functional capacity finding which does not mirror - and, according to Plaintiff, finds no support in - any of the various medical opinions contained in the record.  She notes that the only opinion which was afforded some weight was that of Dr. Tetro, who did not address any limitations caused by Plaintiff's neck impairment or knee and ankle problems, but only her carpal tunnel syndrome.  Plaintiff then highlights all of the various symptoms documented in the record which arose from her neck impairment and her knee and ankle problems and questions whether a lay person, using common sense judgment rather than medical expertise, could properly have concluded that she was able to meet the various exertional demands of light work activity, including the amount of standing, walking, and lifting which such work requires.  The Commissioner argues, in turn, that the ALJ both had good reasons for the weight he assigned to each opinion, and that his residual functional capacity finding was rationally based on the evidence as a whole.

The law in this area is clear, and this Court has addressed it before.  As stated in *Allen v. Comm'r of Soc.* Sec., 351 F. Supp. 3d 327, 338–39 (W.D.N.Y. 2018),

> An ALJ is not required to "explicitly... reconcile every conflicting shred of medical testimony," so long as the ALJ carefully considers all of the evidence in reaching a determination. *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). Further, the ALJ's RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Id. at 56.

It is also true, however, that, as this Court said in *Riley v. Comm'r of Soc. Sec.*, 2019 WL

5287957, at *4 (W.D.N.Y. Oct. 17, 2019), "the ALJ, while entitled to disagree with the medical opinions, can do so only for reasons which have a sound basis in the record itself."

      Here, the ALJ crafted a very specific residual functional capacity finding which, for the most part, did not reflect any functional analysis from the medical reports or associated opinions. As reflected above, Plaintiff reported significant limitations in her functioning from the date of her injury forward, which included pain from prolonged walking and standing - understandable given her knee and ankle injuries - and neck pain radiating into her arms and hands which precipitated a second, largely unsuccessful surgery.  There are multiple medical opinions indicating a large degree of disability from each of her conditions separately, and the one opinion which took all of those conditions into account concluded that they rendered her totally disabled from any work.  The ALJ's decision does not actually provide a reasoned explanation for how he decided on his residual functional capacity finding; it only recites that finding after a summarization of the records concerning each of her severe impairments.  The only specific example the ALJ gave of a finding that supposedly supports this assessment was that she walked with a normal gait.

      All told, this is one of those cases where the only way the ALJ could have derived this residual functional capacity from the record is by using his own lay judgment in the place of medical evidence, because no other explanation or support for that decision is present in the record.  *Cf. Karen Beth L. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 280, 286 (W.D.N.Y. 2021) ("[w]ithout further explanation by the ALJ as to how he arrived at the specific limitations in the physical RFC, the Court is left to assume that he relied on his own lay opinion in assessing those limitations, which is error").  Consequently, a remand for further proceedings is necessary to address this issue.

## V.  CONCLUSION AND ORDER

      For the reasons set forth in this Opinion and Order, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 9), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

                                 **/s/ Terence P. Kemp**
                                 **United States Magistrate Judge**